UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TRACEY  JAFFRI Individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 1:14-cv-01704-TWP-MJD |
| vs. | ) ) | |
| THRASHER BUSCHMANN & VOELKEL, P.C., | ) ) ) | |
| Defendant. | ) ) | |

**ORDER ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

This matter comes before the Court on Defendant's Motion for Judgment on the Pleadings. [Dkt. 17.] For the reasons set forth below, the Court **GRANTS** Defendant's motion.

## I.       Background

Tracey Jaffri ("Plaintiff") is an Indiana resident who lives in a subdivision managed by the Huntwick Community Association, Inc. ("Huntwick"). [Dkt. 12 ¶¶ 3, 6 (Pl.'s Am. Compl.).] Homeowners in the subdivision are subject to the Declaration of Covenants, Conditions and Restrictions of Huntwick (the "Huntwick Covenants" or the "Covenants"). [Dkt. 15-1.] Among other provisions, the Covenants require homeowners such as Plaintiff to pay homeowners' association fees in the form of "Regular Assessments" and "Special Assessments" as imposed by Huntwick's Board of Directors. [*Id.* ¶¶ 7.2, 7.3.]

Plaintiff became delinquent on her payment of these fees and eventually owed Huntwick $144.00. [Dkt. 24 at 1.] Huntwick then arranged for a local law firm, Thrasher Buschmann & Voelkel, P.C. ("Defendant"), to try to collect the delinquent fees. [*See* Dkt. 12 ¶¶ 4,6.] Defendant did not file a lawsuit against Plaintiff, [Dkt. 12 ¶ 1], but on August 21, 2014, Defendant sent

Plaintiff a dunning letter. [Dkt. 12-1.] The letter first sought to collect the $144.00 in homeowners' assessments that Plaintiff owed to Huntwick. [*Id.* at 1.] The letter then also attempted to collect $125.00 in attorney's fees that Defendant had incurred in its efforts to collect the assessments. [*Id.*]

The request for attorney's fees is the basis for this lawsuit. On October 19, 2014, Plaintiff filed suit in this Court alleging that Defendant's attempt to collect attorney's fees violated the Fair Debt Collection Practices Act ("FDCPA"). [Dkt. 1.] Plaintiff then amended her complaint to add allegations on behalf of a purported class of similarly situated homeowners. [Dkt. 12.]

Plaintiff's amended complaint alleges that Defendant violated §§ 1692e(2)(A), 1692e(2)(B), 1692e(10), and 1692f of the FDCPA. The first two provisions state that it is a violation of the FDCPA to falsely represent "(A) the character, amount, or legal status of any debt;" or "(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C.A. § 1692e(2). The third provision states that it is a violation of the FDCPA to use "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* § 1692e(10). The final provision states a debt collector may not attempt to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1).

Plaintiff's allegations rest on her contention that the contract governing collection of the assessments at issue does not permit recovery of attorney's fees unless and until a lawsuit has been filed against the debtor. [Dkt. 24 at 2.] Defendant in this case did not file such a lawsuit, and Plaintiff thus argues that Defendant's request for attorney's fees misrepresented the amount

of the debt at issue; deceived Plaintiff about the amount owned; and constituted an attempt to recover amounts that were not expressly authorized by the agreement creating the debt.

On January 16, 2015, Defendant answered Plaintiff's amended complaint. [Dkt. 15.] Three weeks later, Defendant moved for judgment on the pleadings. [Dkt. 17.] Defendant contends that the Huntwick Covenants provide for collection of attorney's fees during debt collection efforts regardless of whether a lawsuit has been filed against the debtor. [*See* Dkt. 18.] Defendant therefore argues that its attempt to collect such fees without filing a lawsuit against Plaintiff was authorized by the agreement creating the debt and did not misrepresent the amount of the debt owed. [*See id.*] As such, it contends that its conduct did not violate the FDCPA.

The parties consented to the Magistrate Judge's jurisdiction "to hear and render a final decision regarding Defendant's motion for judgment on the pleadings," [Dkt. 19], and the motion was referred to the undersigned for that purpose. [Dkt. 27] The parties also agree that the dispositive issue is whether the Huntwick Covenants permit the recovery of attorney's fees only after a lawsuit has been filed, as Plaintiff contends, or whether the Covenants allow the recovery of attorney's fees even when no lawsuit has been filed, as Defendant contends. [*See* Dkt. 24 at 2 & n.1.] If the former, then Defendant's motion must be denied; if the latter, then Defendant is entitled to an entry of judgment on the pleadings.

## II.     Discussion

Rule 12(c) allows the parties to move for judgment after the close of the pleadings. Fed. R. Civ. P. 12(c). Courts review such motions under the same standards that apply when reviewing a motion under Fed. R. Civ. P. 12(b)(6). *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012). The Court must thus take all well-pleaded allegations as true and draw all reasonable inferences in favor of the non-movant. *Id.* The Court will grant judgment in the

defendant's favor if the plaintiff's complaint does not "set[] forth facts sufficient to support a cognizable legal theory." *Laborers Local 236, AFL-CIO v. Walker*, 749 F.3d 628, 632 (7th Cir. 2014) (quotation omitted).

Under Rule 12(c), the Court may consider only the pleadings. *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). "The pleadings include the complaint, the answer, and any written instruments attached as exhibits." *Id.* If a conflict exists between the allegations in the complaint or the answer and any attached exhibit, then "the exhibit trumps the allegations." *Id.* at 454.

The parties in this case do not contest the relevant facts giving rise to this litigation. [*See, e.g.*, Dkt. 24 at 2.] Further, Defendant's amended answer included as an exhibit the Huntwick Covenants that are in dispute. [Dkt. 15-5.] The Court may thus consider the Huntwick Covenants and assess whether they support Plaintiff's claim that Defendant was not entitled to seek attorney's fees when it sent the dunning letter. If so, then Plaintiff's complaint states a "cognizable legal theory," and the Court will deny Defendant's motion; if not, then Plaintiff's complaint does not state such a cognizable legal theory, and the Court will grant Defendant's motion. *See Laborers Local 236*, 749 F.3d at 632.

### A.  Applicable Law

The Court must first determine which body of law governs the interpretation of the Huntwick Covenants. In this case, the Court has federal question jurisdiction based on an alleged violation of the FDCPA. Courts exercising federal question jurisdiction typically apply the choice-of-law rules of federal common law. *See, e.g.*, *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 795 (2d Cir. 1980) ("This is a federal question case, however, and it is appropriate that we apply a federal common law choice-of-law rule in order to decide which of the concerned jurisdiction's substantive law of fraud . . . should govern.").

Federal common law endorses the choice-of-law analysis set out in the Restatement (Second) of Conflict of Laws. *In re ATA Airlines, Inc.*, No. 08-03675-BHL-11, 2009 WL 701728, at *4 (Bankr. S.D. Ind. Mar. 16, 2009) (citing *Eli Lilly Do Brasil, Ltda. v. Fed. Express Corp.*, 502 F.3d 78, 81 (2d Cir. 2007)). Under this approach, a court will give effect to a contract's choice of law provision unless 1) "the chosen state has no substantial relationship to the parties or the transaction and there is no reasonable basis for the parties' choice;" or 2) the "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state." *Id.* (quoting Restatement (Second) of Conflict of Laws § 187)).

The Huntwick Covenants provide that they "shall be governed by and construed in accordance with the laws of the State of Indiana." [Dkt. 15-1 ¶ 12.5.] Neither party has argued that the choice of Indiana law is unreasonable or that application of Indiana law would be contrary to the policy of another state. [*See* Dkts. 18 & 24.] Further, Defendant relies on Indiana law in its brief, and Plaintiff does not contest this choice of law. [*See* Dkt. 18 at 5-6; Dkt. 24.] The Court thus concludes that Indiana law governs the interpretation of the Huntwick Covenants.[1]

### B.  Indiana Law of Contract Interpretation

The Huntwick Covenants are a set of restrictive covenants that run with the land within the Huntwick subdivision. [*See* Dkt. 15-1 at 1-2.] Neither party disputes that the Covenants are

---

[1] By arguing that Indiana law applies to interpretation of the Huntwick Covenants, the parties have also waived any argument that a different body of law governs that issue. *Cf. McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir.), *reh'g denied*, 769 F.3d 535 (7th Cir. 2014) (noting in a diversity case that the "choice of law issue may be waived . . . if a party fails to assert it"). More generally, "[c]ourts do not worry about conflict of laws unless the parties disagree on which state's law applies." *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 427 (7th Cir. 1991). Because the parties in this case agree that Indiana law applies, the Court will not disturb that agreement. *Accord Fieldturf Int'l, Inc., Fieldturf, Inc. v. Triexe Mangement Grp., Inc.*, No. 03 C 3512, 2004 WL 866494, at *4 (N.D. Ill. Apr. 16, 2004) (concluding in federal question case that, "[b]ecause the parties have not argued the choice of law question, the Court will not disturb plaintiffs' assumption that Illinois law applies").

binding on Plaintiff and Huntwick, [*see* Dkts. 18 & 24], and in Indiana, restrictive covenants are express contracts that courts interpret in the same manner as any other contract. *Johnson v. Dawson*, 856 N.E.2d 769, 772 (Ind. Ct. App. 2006) ("Because covenants are a form of express contract, we apply the same rules of construction.").

Interpretation of a contract is a matter of law for decision by the court. *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind. 1992). If the terms of the contract are clear and unambiguous, then the contract is binding on the parties and the court need only apply the terms of the contract. *Trustcorp Mortgage Co. v. Metro Mortgage Co.*, 867 N.E.2d 203, 212 (Ind. Ct. App. 2007). In contrast, if the contract is ambiguous, then the interpretation depends on the nature of the ambiguity: if the ambiguity exists because of extrinsic facts, then the court must allow the fact-finder to construe the contract; if, on the other hand, "the ambiguity arises because of the language used in the contract and not because of extrinsic facts, its construction is purely a question of law to be determined by the trial court." *Id.*

The parties in this case contest only the meaning of the contractual language in the Huntwick Covenants themselves; they do not contest any extrinsic facts related to the Covenants.[2] [*See* Dkts. 18 & 24.] Thus, whether the contract is deemed clear or ambiguous is irrelevant: its interpretation is a matter of law that the Court may appropriately decide at this stage of litigation. *See Trustcorp*, 867 N.E.2d 203; *see also Eskew v. Cornett*, 744 N.E.2d 954, 957 (Ind. Ct. App. 2001) (affirming trial court's entry of judgment on the pleadings in dispute over contractual interpretation).

---

[2] Defendant briefly alleges in its reply brief that its interpretation is "consistent with common industry practice." [Dkt. 26 at 8.] Defendant, however, offers no elaboration or support for this contention, and Defendant did not raise this argument in its opening brief. This argument is therefore waived, and the Court need not address it. *See, e.g., F.T.C. v. World Media Brokers*, 415 F.3d 758, 766 (7th Cir. 2005).

When interpreting a contract, Indiana courts "begin with the plain language of the contract, reading it in context and, whenever possible, construing it so as to render each word, phrase, and term meaningful, unambiguous, and harmonious with the whole." *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012). The primary goal is to "ascertain and give effect to the parties' intent as reasonably manifested by the language of the agreement." *Reuille v. E.E. Brandenberger Const.*, Inc., 888 N.E.2d 770, 771 (Ind. 2008). This intent "must be determined from the specific language used," and "[s]pecific words and phrases cannot be read exclusive of other contractual provisions." *Johnson*, 856 N.E.2d at 773. Indiana courts must also consider the entirety of the contract, *id.*, and may look to dictionary definitions or a disputed term's common meaning for guidance. *See, e.g.*, *Reuille*, 888 N.E.2d at 771 (citing Black's Law Dictionary); *Travelers*, 715 N.E.2d at 937 (citing Webster's New World Dictionary); *THQ Venture v. SW, Inc.*, 444 N.E.2d 335, 338 (Ind. Ct. App. 1983) ("Words used in a contract must be given their common meaning[.]"). The Court now applies these rules to the Covenants at issue.

### C. Analysis

The parties primarily dispute the meaning of Paragraphs 7.6 and 7.7. As described below, the Court agrees with Plaintiff's interpretation of Paragraph 7.6, but also agrees with Defendant's interpretation of Paragraph 7.7. Further, because Paragraph 7.7 provides a basis for Defendant to seek the fees at issue in this case, the Court concludes that Defendant's attempt to collect the fees did not violate the FDCPA.

### 1. Paragraph 7.6

The parties devote the majority of their briefs to Paragraph 7.6. That provision sets out the consequences for homeowners such as Plaintiff who fail to pay the Regular or Special Assessments imposed by the Huntwick Board of Directors. It specifically provides:

7.6 <u>Failure of Owner to Pay Assessments</u>.

(i) No Owner may exempt himself from paying Regular Assessments and Special Assessments due to such Owner's nonuse of the Common Areas or abandonment of the Residence Unit or lot belonging to such Owner. If any Owner shall fail, refuse or neglect to make any payment of any assessment when due, the lien for such assessment (as described in Paragraph 7.7 below) may be foreclosed by the Board of Directors of the Association for and on behalf of the Association as a mortgage on real property or as otherwise provided by law. In any action to foreclose the lien for an assessment, the Owner and any occupant of the Residence Unit shall be jointly and severally liable for the payment to the Association on the first day of each month of reasonable rental for such Residence Unit, and the Board of Directors shall be entitled to the appointment of a receiver for the purpose of preserving the Residence Unit or Lot, and to collect the rentals and other profits therefrom for the benefit of the Association to be applied to the unpaid assessments. The Board of Directors of the Association, at its option, may in the alternative bring suit to recover a money judgment for any unpaid assessment without foreclosing or waiving the lien securing the same. In any action to recover an assessment, whether by foreclosure or otherwise, the Board of Directors of the Association, for and on behalf of the Association, shall be entitled to recover from the Owner of the respective Lot costs and expenses of such action incurred (including but not limited to attorneys fees) and interest from the date such assessments were due until paid.

[Dkt. 15-1 ¶ 7.6.]

As noted above, Defendant contends that the Huntwick Covenants allow Defendant to attempt to collect attorney's fees regardless of whether a lawsuit has been filed against a delinquent homeowner. [Dkt. 18 at 7.] Defendant focuses on the last sentence of Paragraph 7.6 and notes that it gives Huntwick "the right to recover 'costs and expenses . . . incurred (including but not limited to attorneys [sic] fees)' in 'any action to recover an assessment, whether by foreclosure *or otherwise*." [Dkt. 18 at 7 (emphasis original) (quoting Dkt. 15-1 ¶ 7.6).]

Defendant attaches special significance to the term "otherwise." [*See id.* at 7-8.] It notes that the Supreme Court has previously construed a statute that imposed a tax on bank deposits "subject to payment by check or draft, or represented by certificates of deposit or otherwise." [*Id.* at 6 (quoting *Oulton v. German Sav. & Loan Soc.*, 84 U.S. 109, 110 (1872).] The Supreme Court determined that the term "otherwise" meant "any other means which could possibly make the

depositor a holder or user, or give him credit upon the moneys which were deposited with the bank." *Oulton*, 84 U.S. at 114. Defendant thus concludes that the term "otherwise" in the Huntwick Covenants must also mean "any other means." [Dkt. 18 at 8.] Defendant would therefore read Paragraph 7.6 as allowing for the recovery of attorney's fees whenever such fees are incurred to recover a debt, whether the recovery is accomplished "by foreclosure" or "by any other means." [*See id.*] This interpretation, in turn, implies that a lawsuit is not a pre-requisite to recovering fees. Defendant would thus be free to recover its fees for *any* sort of attempt to collect Plaintiff's assessments, regardless of whether Defendant chose to attempt the collection by filing a lawsuit.

The word "otherwise," however, must be read in the context of the contract. *See, e.g.*, *Citimortgage*, 975 N.E.2d at 813 ("We begin with the plain language of the contract, reading it in context[.]"). The last sentence of Paragraph 7.6 reads as follows:

> **In any action** to recover an assessment, **whether by foreclosure or otherwise**, the Board of Directors of the Association, for and on behalf of the Association, shall be entitled to recover from the Owner of the respective Lot costs and expenses of such action incurred (including but not limited to attorneys fees) and interest from the date such assessments were due until paid.

[Dkt. 15-1 ¶ 7.6 (emphasis added).] The beginning of the sentence indicates that the term "otherwise" modifies the word "action." The rest of the sentence then confirms this interpretation by noting that recovery is limited to the costs and expenses incurred in "such action." Defendant may thus be correct that "otherwise" is an expansive term, but its connection to the word "action" limits the extent of that term. "Otherwise," as used here, does not mean "by any other means" in general; rather, it means "by any other means" constituting an "action." The Court must thus interpret the term "action."

Plaintiff argues that the term "action" means "lawsuit," such that Defendant is entitled to recover attorney's fees only if it files a lawsuit against Plaintiff. [Dkt. 24 at 4.] In reply, Defendant contends that the term "action" is more general in that it simply means "a thing done" or "the process of doing something." [Dkt. 26 at 2-3.]

As noted above, dictionary definitions can help explain the terms of a contract, *see, e.g.*, *Reuille*, 888 N.E.2d 7 at 771, and both parties in this case cite definitions of the term "action." [Dkt. 24 at 4; Dkt. 26 at 3.] Defendant cites the Merriam-Webster Dictionary for the proposition that "action" means "the accomplishment of a thing usually over a period of time, in stages, or with the possibility of repetition" or "a thing done." [Dkt. 26 at 2-3 (quoting Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/action (last visited Feb. 18 2015)).] Plaintiff counters with the observation that Merriam-Webster's first definition of action is "the initiating of a proceeding in a court of justice by which one demands or enforces one's right; *also*: the proceeding itself." [Dkt. 24 at 4 (quoting Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/action (last visited Feb. 7 2015)).] Black's Law Dictionary similarly provides multiple definitions: it defines "action" both as a general term meaning "[t]he process of doing something" or "[a] thing done," but also as a specific term meaning "[a] civil or criminal judicial proceeding." Black's Law Dictionary (10th ed. 2014).

Standing alone, these competing definitions of "action" provide little clarity. To resolve any resulting ambiguity, the Court looks to the context in which the term "action" is used. *See, e.g.*, *Citimortgage*, 975 N.E.2d at 813 (Ind. 2012). Paragraph 7.6 sets out

two ways in which the Huntwick Board may attempt to force payment of homeowners' assessments. The first option is foreclosure:

> If any Owner shall fail, refuse or neglect to make any payment of any assessment when due, the lien for such assessment (as described in Paragraph 7.7 below) may be foreclosed by the Board of Directors of the Association for and on behalf of the Association as a mortgage on real property or as otherwise provided by law.

[Dkt. 15-1 ¶ 7.6.] In Indiana, such a foreclosure by a homeowners association requires the filing of a lawsuit. Ind. Code § 32-28-14-8(a). ("A homeowners association may enforce a homeowners association lien by filing a complaint in the circuit or superior court of the county where the real estate that is the subject of the lien is located."). The Huntwick Covenants then add that "[i]n any **action** to foreclose the lien for an assessment, the Owner and any occupant of the Residence Unit shall be jointly and severally liable for the payment to the Association." [Dkt. 15-1 ¶ 7.6.] The Covenants thus connect the term "action" to a lawsuit to foreclose the lien.

The Covenants then provide a second option to force payment:

> The Board of Directors of the Association, at its option, may in the alternative **bring suit** to recover a money judgment for any unpaid assessment without foreclosing or waiving the lien securing the same.

[*Id.*] The term "suit" in this context is connected to the recovery of a "money judgment," and hence plainly contemplates the filing of a lawsuit.

Together, then, the preceding sentences set out two ways in which Huntwick may recover the unpaid homeowners fees: 1) a lawsuit to foreclose and 2) a lawsuit for a money judgment. Immediately following these two provisions for lawsuits, the Covenants then state:

> In any action to recover an assessment, whether by foreclosure or otherwise, the Board of Directors of the Association, for and on behalf of the Association, shall be entitled to recover from the Owner of the respective Lot costs and expenses of

such action incurred (including but not limited to attorneys fees) and interest from the date such assessments were due until paid.

[Dkt. 15-1 ¶ 7.6.] The phrase "foreclosure or otherwise" thus refers to the two previously-delineated methods by which Huntwick may force payment: namely, a lawsuit to foreclose or a lawsuit for a money judgment. Also, because the phrase "foreclosure or otherwise" is used to explain the term "action," the two options to force payment thus also define the scope of the term "action." In this context, then, "action" means a lawsuit to foreclose or a lawsuit for a money judgment.

The structure of Paragraph 7.6 therefore supports Plaintiff's interpretation of the contract. The dictionary definitions of "action" may differ,[3] but the context in which the term is used in this case indicates that the "action" at issue must be one of two sorts of lawsuits. Hence, the provision for attorney's fees "[i]n any action" is also constrained to situations involving the filing of a lawsuit, such that Paragraph 7.6 does not entitle Defendant to seek its attorney's fees without first filing a lawsuit against Plaintiff.

The terms accompanying the phrase "attorney's fees" are consistent with this conclusion. The last sentence of Paragraph 7.6 provides that Huntwick may "recover" the "costs and expenses of such action incurred (including but not limited to attorneys fees)[.]" [Dkt. 15-1 ¶ 7.6.] As Plaintiff notes, [Dkt. 24 at 5], "recover" is a word closely associated with litigation. *See, e.g.*, Black's Law Dictionary (10th ed. 2014) (defining "recover" as "[t]o get back or regain in full or in equivalence," "[t]o obtain (relief) by

---

[3] The dictionary definitions may not create as much ambiguity as Defendant would suggest. Although Black's Law Dictionary does define "action" as "[t]he process of doing something" or "[a] thing done," it also notes that "[t]he terms 'action' and 'suit' are nearly if not quite synonymous." Black's Law Dictionary (10th ed. 2014). Any remaining distinction is a relic from the historical division of law and equity, *see id.*, and today, the fact that the two are "nearly . . . synonymous" supports the interpretation that the term "action" in the Huntwick Covenants means "lawsuit."

judgment or other legal process," "[t]o obtain (a judgment) in one's favor," or "to succeed in a lawsuit or other legal proceeding"). Similarly, the term "'costs' is a term of art with specific legal meaning." *Wiley v. McShane*, 875 N.E.2d 273, 276 (Ind. Ct. App. 2007) (citations omitted). In particular, "costs" include "only filing fees and statutory witness fees," *id.*, such that the term "costs" is also closely associated with litigation. The juxtaposition of the phrase "attorneys fees" with the terms "recover" and "costs" thus strengthens the conclusion that Paragraph 7.6 allows Huntwick to seek such fees only when a lawsuit has actually been filed.[4]

As noted above, Indiana courts also define contractual terms by reference to their common meaning. *See, e.g.*, *THQ Venture*, 444 N.E.2d at 338 (Ind. Ct. App. 1983) ("Words used in a contract must be given their common meaning unless, from the entire contract and the subject matter thereof, it is clear that some other meaning was intended"). As is relevant here, Indiana courts have expressly recognized that the commonly accepted meaning of the term "action" is a lawsuit. *Pathman Const. Co. v. Knox Cnty. Hosp. Ass'n*, 164 326 N.E.2d 844, 854 (Ind. App. 1975) ("The term 'action' in its usual sense, at least its usual legal sense, means a suit brought in court, a formal complaint within the jurisdiction of a court of law.").[5] This

---

[4] In its reply, Defendant notes that Plaintiff "suggests that the inclusion of 'costs' as recoverable expenses precludes attorney's fees outside of litigation, but she does not explain why the inclusion of certain charges incurred only during litigation prevents the inclusion of certain other charges incurred before litigation." [Dkt. 26 at 4.] Indiana courts, however, acknowledge and apply the interpretive canon *expressio unius est exclusio alterius. See, e.g.*, *Januchowski v. N. Indiana Commuter Transp. Dist.*, 905 N.E.2d 1041, 1049 (Ind. Ct. App. 2009). The enumeration of litigation-specific specific expenses in Paragraph 7.6 thus supports a finding that expenses unrelated to litigation are in fact excluded from this paragraph.

[5] The Indiana courts are hardly alone in this understanding. *See, e.g.*, *Horkey v. J.V.D.B. & Associates, Inc.*, 333 F.3d 769, 775 (7th Cir. 2003) (quoting Black's Law Dictionary 28 (6th ed.1990)) ("An 'action' 'in its usual legal sense means a lawsuit brought in a court.'"); *Heneghan v. Sekula*, 536 N.E.2d 963, 966 (Ill. App. Ct. 1989) (quoting Black's Law Dictionary 26 (5th ed. 1979)) ("The ordinary and popular meaning of the term 'action' includes 'all the formal proceedings in a court of justice attendant upon the demand of a right made by one person of another in such court, including an adjudication upon the right and its enforcement or denial by the court.'"); *see also Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 730 (7th Cir. 2004) (noting that "legal action" "can only be intended to mean some sort of lawsuit," as opposed to "any activity of a lawyer"). The Federal Rules of Civil Procedure and the Indiana Trial Rules are also consistent with this understanding of the term "action." *See* Fed. R.

understanding reinforces the conclusion that the term "action" is synonymous with litigation. The Court thus finds it unlikely that the drafters of the Huntwick Covenants intended to impart a different meaning to the term "action," and, in its efforts to "give effect to the parties' intent," *see Reuille*, 888 N.E.2d at 771 (Ind. 2008), the Court concludes that it should construe the term "action" to mean "lawsuit."

Finally, the Court notes that the meaning of a contract's terms "must be determined from the contract read in its entirety." *Johnson*, 856 N.E.2d at 773. In this case, the term "action" appears not only in Paragraph 7.6, but also in Paragraph 12.1, which reads as follows:

> 12.1 <u>Right of Enforcement</u>
>
> Violation or threatened violation of any of the covenants, conditions or restrictions enumerated in this Declaration or in a Plat of any part of the Real Estate now or hereafter recorded in the office of the Recorder of Hendricks County, Indiana shall be grounds for **an action** by Developer, the Association, any Owner and all persons or entities claiming under them, against the person or entity violating or threatening to violate any such covenants, conditions or restrictions. Available relief in **any such action** shall include recovery of damages or other sums due for such violation, injunctive relief against any such violation or threated violation, declaratory relief and the recovery of costs and attorneys fees reasonably incurred by any party successfully enforcing such covenants, conditions and restrictions; <u>provided</u>, however, that neither Developer, any Owner nor the Association shall be liable for damages of any kind to any person for failing or neglecting for any reason to enforce any such covenants, conditions or restrictions.

[Dkt. 15-1 ¶ 12.1 (bold emphasis added).] Under the terms of this paragraph, Huntwick may pursue "an action" for "recovery of damages," for "injunctive relief," for "declaratory relief," and for "the recovery of costs and attorneys fees." [*Id.*] This range of

---

Civ. P. 2 ("There is one form of action—the civil action"); *id.* 3 ("A civil action is commenced by filing a complaint with the court."); Ind. R. Trial P. 2(a) ("There shall be one [1] form of action to be known as 'civil action.'"); *id.* 3 ("A civil action is commenced by filing with the court a complaint or such equivalent pleading or document as may be specified by statute[.]").

relief plainly indicates that the term "action" involves the filing of a lawsuit. Further, the

Court may infer that the drafters of the Covenants intended that the term "action" in

Paragraph 12.1 carry the same meaning as the term "action" in Paragraph 7.6. *See, e.g.*,

*Stagg Indus. Dev. Corp. v. Gencorp, Inc.*, No. EV 99-0119-C M/H, 2000 WL 1428669, at

*4 (S.D. Ind. May 26, 2000) (citing *George S. May Int'l Co. v. King*, 629 N.E.2d 257,

260 (Ind. Ct. App. 1994)) ("[W]hen parties use or refer to the same term in two different

clauses, courts should presume they intend for the term to have the same meaning in both

clauses.") Reading the Huntwick Covenants as a whole thus confirms that the term

"action" in Paragraph 7.6 refers only to the filing of a lawsuit. Because Defendant in this

case did not file such a suit, the Court concludes that Paragraph 7.6 did not entitle

Defendant to seek its attorney's fees.

This conclusion, however, does not end the analysis. Defendant contends that

Paragraph 7.7 provides an independent basis for seeking attorney's fees, regardless of the

interpretation of Paragraph 7.6. [Dkt. 18 at 9.] The Court now considers this argument.

### 2. Paragraph 7.7

As with Paragraph 7.6, the Court begins with the language of Paragraph 7.7:

7.7 Creation of Lien and Personal Obligation

All Regular Assessments and Special Assessments, **together with interest, costs
of collection and attorneys' fees**, shall be a continuing lien upon the Lot against
which such assessment is made prior to all other liens except only (i) tax liens on
any Lot in favor of any unit of government or special taxing district and (ii) the
lien of any first mortgage of record. **Each such assessment, together with
interest, costs of collection and attorneys' fees, shall also be the personal
obligation of the Owner of the Lot at the time such assessment became due
and payable**. Where the Owner constitutes more than one person, the liability of
such persons shall be joint and several. The personal obligation for delinquent
assessments (as distinguished from the lien upon the Lot) shall not pass to such
Owner's successors in title unless expressly assumed by them. The Association,
upon request of a proposed Mortgagee or proposed purchaser having a contractual

right to purchase a Lot, shall furnish to such Mortgagee or purchaser a statement setting forth the amount of any unpaid Regular or Special Assessments or other charges against the Lot. Such statement shall be binding upon the Association as of the date of such statement.

[Dkt. 15-1 ¶ 7.7.]

The plain language of this provision indicates that Huntwick is entitled to collect attorney's fees from a delinquent home owner regardless of whether a lawsuit has been filed. As described above, the term "action" in the context of the Huntwick Covenants is synonymous with litigation, but Paragraph 7.7 contains no reference to "actions" of any kind, nor does Paragraph 7.7 use others terms such as "suit" or "proceeding" that might be connected to litigation. In fact, as Defendant notes, the paragraph "says absolutely nothing about litigation." [Dkt. 18 at 9.]

Instead, Paragraph 7.7 simply states that, as soon as an assessment becomes due, a homeowner has a "personal obligation" to pay the assessment, "together with interest, costs of collection and attorneys' fees[.]" [Dkt. 15-1 ¶ 7.7.] The triggering event for the recovery of fees under this paragraph therefore is not the commencement of an "action" or any other sort of litigation; rather, the fees are recoverable as soon as the homeowner is late in payment of her assessments. In Plaintiff's case, then, the obligation to pay attorney's fees attached as soon as Plaintiff fell behind on her assessments. At that time— and without any further action—Defendant was entitled to seek payment of the assessments, payment of the collection costs, and, most importantly, payment of its attorney's fees. Its attempts to collect those fees was thus authorized by the underlying Covenants and did not violate the FDCPA.

Plaintiff disputes this interpretation of Paragraph 7.7. She first contends that Paragraph 7.7 "does not deal with when attorney fees are owed[.]" [Dkt. 24 at 7

(emphasis original); *see also id.* ("It does not, as Defendant suggest, say when attorney fees are owed.").]

This argument is plainly incorrect: Paragraph 7.7 by its terms states that all assessments, "together with interest, costs of collection and attorneys' fees, shall also be the personal obligation of the Owner of the Lot **at the time such assessment became due and payable.**" [Dkt. 15-1 ¶ 7.7 (emphasis added).] The Paragraph thus explicitly states that attorney's fees are recoverable from the date that a homeowner becomes delinquent in paying her assessments, and the Court must give effect to this clear language. *See, e.g.*, *Trustcorp*, 867 N.E.2d at 212 ("The unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts.").

Plaintiff then contends that Paragraph 7.7 is not an independent basis for entitlement to attorney's fees. [Dkt. 24 at 7.] She argues that Paragraph 7.7 only describes the manner in which fees owed "pursuant to other paragraphs," such as Paragraph 7.6, become both a lien on the lot and a personal obligation of the homeowner. [*Id.*]

This arguments is backwards. Paragraph 7.6 states:

If any Owner shall fail, refuse or neglect to make any payment of any assessment when due, **the lien for such assessment (as described in Paragraph 7.7 below)** may be foreclosed by the Board of Directors of the Association for and on behalf of the Association as a mortgage on real property or as otherwise provided by law.

[Dkt. 15-1 ¶ 7.6.] This paragraph thus provides that the lien enforced through a foreclosure or other lawsuit is created "as described in Paragraph 7.7." Hence, it is Paragraph 7.7—rather than 7.6—that creates the homeowner's obligation to pay assessments, costs of collection, and attorney's fees. And, as described above, Paragraph 7.7 creates this obligation without any reference to litigation. Thus, Paragraph 7.6 may

give Huntwick the *option* to foreclose on the lien by filing a lawsuit, but Paragraph 7.7 creates an obligation to pay costs of collection and attorney's fees that is independent of any foreclosure or other lawsuit.

Plaintiff also attempts to use the term "costs" to link Paragraph 7.7's obligation to pay fees to Paragraph 7.6's requirement of litigation. [Dkt. 24 at 7.] She notes that Paragraph 7.7 provides for recovery of all assessments, "together with interest, *costs of collection* and attorneys' fees." [Dkt. 15-1 ¶ 7.7 (emphasis added).] She then contends that because the "term 'costs' . . . is a term linked solely with litigation," the provision for attorney's fees in connection with "costs of collection" must also contemplate litigation. [Dkt. 24 at 7.]

Plaintiff's argument ignores the distinction between the term "costs" as used in Paragraph 7.6 and the term "costs of collection" as used in Paragraph 7.7.[6] This distinction is significant: In Paragraph 7.6, the Covenants provide for recovery of "costs" incurred in "such action." [Dkt. 15-1 ¶ 7.6.] As explained above, the term "action" in the Covenants means the filing of a lawsuit and *only* the filing of a lawsuit. Thus, the term "costs" refers to amounts paid in connection with a lawsuit.

In Paragraph 7.7, however, the drafters of the Covenants did not use the term "costs;" they instead used the term "costs of collection." They thus chose a term *different* than that which they had previously used to refer to litigation. This, in turn, implies that the term "costs of collection" is *not* constrained to litigation, such that the term provides for collection of costs *outside* of litigation. The reference to attorney's fees in conjunction

---

[6] Indeed, Plaintiff's argument reads the words "of collection" entirely out of the contract. Such a reading is inconsistent with the basic principle that courts interpret contracts "so as to render each word, phrase, and term meaningful[.]" *Citimortgage*, 975 N.E.2d at 813.

with "costs of collection" therefore implies that, pursuant to Paragraph 7.7, attorney's fees are also recoverable *outside* of litigation.

The common understandings of the term "costs" and "costs of collection" are consistent with this analysis. As explained above, the term "costs" is a term of art that is closely connected with litigation. *See, e.g.*, *Wiley v. McShane*, 875 N.E.2d at 276 (defining "costs" as "only filing fees and statutory witness fees"). The term "costs of collection," in contrast, is broader. Black's Law Dictionary, for instance, defines "costs of collection" as "[e]xpenses incurred in receiving payment of a note; esp., attorney's fees incurred in the effort to collect a note." Black's Law Dictionary (10th ed. 2014). It thus defines "costs of collection" without reference to litigation, but still contemplates that the term includes fees for an attorney's work.

By using the term "costs of collection" rather than "costs," the drafters of the Huntwick Covenants in Paragraph 7.7 thus chose to use a term that is commonly understood to encompass situations other than litigation. Moreover, they chose *not* to use the term that they had elsewhere used to refer *only* to litigation. The choice of these different terms carries an implicit intent to confer different meanings. *Cf. Stagg Indus.*, 2000 WL 1428669, at *4 ("[W]hen parties use or refer to the same term in two different clauses, courts should presume they intend for the term to have the same meaning in both clauses."). The Court thus concludes that the term "costs of collection" supports an interpretation of Paragraph 7.7 that allows for collection of attorney's fees outside litigation.

Plaintiff nonetheless argues that this interpretation of Paragraph 7.7 is erroneous because it "would render the final sentence of paragraph 7.6(i) unnecessary and

meaningless." [Dkt. 24 at 8.] This, in turn, would violate the rule that courts should "construe contractual provisions so as to harmonize the agreement, and so as not to render any terms ineffective or meaningless." *See Johnson*, 856 N.E.2d at 773.

The final sentence of Paragraph 7.6 reads as follows:

> In any action to recover an assessment, whether by foreclosure or otherwise, the Board of Directors of the Association, for and on behalf of the Association, shall be entitled to recover from the Owner of the respective Lot costs and expenses of such action incurred (including but not limited to attorneys fees) and interest from the date such assessments were due until paid.

[Dkt. 15-1 ¶ 7.6.] The sentence thus provides for the recovery of costs, expenses and attorney's fees incurred in "such action." [*Id.*] As explained above, the term "action" refers to a lawsuit to foreclose or a lawsuit for a money judgment. Hence, the final sentence of Paragraph 7.6 provides for recovery of costs and attorney's fees in litigation. Plaintiff thus contends that if Paragraph 7.7 is read to provide an independent right to attorney's fees, then Paragraph 7.6 has no purpose. [Dkt. 24 at 8.]

As Defendant points out, [Dkt. 26 at 8], however, Plaintiff's proposed interpretation fares no better. Plaintiff contends (and the Court previously concluded) that Paragraph 7.6 applies only to litigation. If, as Plaintiff now argues, Paragraph 7.6 sets forth the *exclusive* situation in which attorney's fees are recoverable, then it is unnecessary for Paragraph 7.7 to *also* impose liability for "attorneys' fees . . . **at the time such assessment becomes due and payable**." [Dkt. 15-1 ¶ 7.7 (emphasis added).] After all, a homeowner at such a time would not yet face a lawsuit seeking the assessments. Plaintiff's contention that fees can *only* be recovered in litigation is thus inconsistent with Paragraph 7.7's imposition of liability for fees at the time that the assessments initially become due.

As a result, both of the interpretations discussed above would render the Huntwick Covenants duplicative or internally inconsistent. The preference for interpretations that avoid such duplication or inconsistency thus carries little weight in this case, and the Court will adhere to its previous conclusion that Paragraph 7.7 does in fact provide for recovery of attorney's fees even outside of litigation.

Finally, the Court notes that this interpretation of Paragraph 7.7 is consistent with the overall goal of "giv[ing] effect to the parties' intent as reasonably manifested by the language of the agreement." *Reuille*, 888 N.E.2d at 771. Paragraph 7.7 plainly states that a homeowner who does not pay his assessment is liable for attorney's fees "at the time such assessment becomes due and payable." [Dkt. 15-1 ¶ 7.7.] If, as Plaintiff contends, Paragraph 7.6 then restricts recovery of these fees only to situations in which a lawsuit has been filed, the contract creates an incentive to manufacture litigation that might otherwise never materialize. As Defendant notes, this result is "absurd." [Dkt. 26 at 6.] Creating such unnecessary litigation would benefit no one but the lawyers recovering the fees, and the Court cannot accept that the drafters of the Covenants intended this result. The Court therefore concludes once again that Paragraph 7.7 authorizes the recovery of attorney's fees independent of whether any lawsuit has been filed against the delinquent homeowner.

For these reasons, the Court finds that Paragraph 7.7 of the Huntwick Covenants expressly authorized the collection of attorney's fees such as those that Defendant sought to collect in this case. Defendant's attempt to collect these fees therefore did not constitute an attempt to collect an amount unauthorized by the agreement creating Plaintiff's debt and was therefore not a false representation. As such, Defendant's letter

did not violate §§ 1692e(2)(A), 1692e(2)(B), 1692e(10), or 1692f of the FDCPA, and Plaintiff cannot prove any set of facts that would support the claims in her amended complaint. The Court accordingly **GRANTS** Defendant's motion for judgment on the pleadings.

### III.     Conclusion

For the reasons set forth above, the Court **GRANTS** Defendant's Motion for Judgment on the Pleadings. [Dkt. 17.] Plaintiff's Amended Complaint, [Dkt. 12], is dismissed with prejudice. Final judgment shall issue in a separate entry.

Date:  03/10/2015

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Raymond L. Faust
HOUSE REYNOLDS & FAUST LLP
rfaust@housereynoldsfaust.com

Briane M. House
HOUSE REYNOLDS & FAUST LLP
bhouse@housereynoldsfaust.com

Robert E. Duff
INDIANA CONSUMER LAW GROUP
robert@robertdufflaw.com